UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 25-cr-138-1 (RJL) |
| v. | : | |
| | : | |
| DREMALE VANTERPOOL, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SUPPLEMENTAL BRIEF OPPOSING DEFENDANT
VANTERPOOL'S MOTION TO DISMISS INDICTMENT**

Pursuant to the Court's order at the motion hearing held on January 29, 2026, the Government files this supplemental response to address a limited issue raised at oral argument on Defendant Vanterpool's motion to dismiss the Indictment (ECF No. 34). In particular, neither this Court's opinion in *United States v. Grabinski,* 25-CR-19 (RJL), 2026 WL 125230 (D.D.C. Jan. 16, 2026), nor Judge Sooknanan's opinion in *United States v. Gaffney,* 25-CR-282 (SLS), 2025 WL 3123668 (D.D.C. Nov. 7, 2025), indicate that dismissal in this case is warranted under Fed. R. Crim. P. 48(b).

**I.  United States v. Grabinski, 25-CR-19 (RJL), 2026 WL 125230 (D.D.C. Jan. 16, 2026)**

In *Grabinski,* this Court dismissed a first (June 2022) indictment against the defendant without prejudice for violating the Speedy Trial Act. 2026 WL 125230, at *1. After the Government re-indicted the case in January 2025, the Court referred Grabinski for competency proceedings, and Dr. Jami Mach of the Bureau of Prisons issued a report finding Grabinski was incompetent, but could be restored with appropriate treatment. *See, e.g.*, *id.* at *2, ECF No. 26, 25-CR-19. Grabinski was returned to D.C. jail, and the parties were ordered to submit a joint status report regarding defense's request to transfer Grabinski to a BOP treatment facility to determine whether competency could be restored, as well as next steps in the case. 2026 WL 125230, at *2;

*see also* Min. Order (Aug. 14, 2025), 25-CR-19.  The Government then missed both the deadline to file that joint status report and to file an opposition to the defendant's ensuing motion to dismiss the case based on the delays in prosecution. 2026 WL 125230, at *2.  Grabinski remained incarcerated during the pendency of both cases, totaling *43 months* by the time of the dismissal. *Id.* at *4.  Last month, in January 2026, this Court granted Grabinski's motion to dismiss with prejudice under Rule 48(b). *Id.*  Recognizing that such dismissal is "strong medicine that should be applied 'only in extreme circumstances,'" the Court concluded that the delay in Grabinski's case was so egregious to warrant dismissal, even absent a finding of a constitutional violation. *Id.* at *3 (quoting *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 30 (D.D.C. 2009); citing *Mann v. United States*, 304 F.2d 394, 398 (D.C. Cir. 1962)).

In *Grabinski*, each of the *Barker* factors weighed in the defendant's favor.  First, Grabinski's 43 months of incarceration approached the *statutory maximum* had he been found guilty of the original offenses with which he was charged—a period the Court found both presumptively prejudicial and intolerable given the circumstances of the case. *Id.* at *4.  Second, the Court concluded that the Government was more to blame for this delay by failing to move the competency proceedings forward, describing the Government's attitude as somewhere between "persistent neglect and callous indifference." *Id.* (internal quotation marks and citation omitted).  The Court pointed out that the original dismissal for Speedy Trial Act violations underscored the Government's negligence the second time. *Id*. at *5.  Third, Grabinski had "*repeatedly* asserted his right to a speedy trial at multiple junctures." *Id.* (emphasis in original).  Fourth and finally, the Court reasoned that Grabinski's 43 months of incarceration—including his seven months in D.C. Jail without medical treatment—prejudiced him, and that any evidentiary concerns were neutral.

*Id.* The Court ultimately concluded that dismissal *with* prejudice was the only appropriate remedy in the light of the record of the case across three-and-a-half years. *Id.* at *6.

Vanterpool's case is a far cry from those circumstances. As an initial matter, given that Rule 48(b) "is a restatement of the inherent power of the court to dismiss a case for want of prosecution," Vanterpool—unlike Grabinski—has not pointed to any failure by the Government to adequately prosecute this case. Advisory Committee Notes, Fed. R. Crim. P. 48(b) (1944). Even a cursory review of the docket indicates otherwise.

Moreover, the *Barker* factors do not mirror the facts in *Grabinski*. The Government concedes that under the first factor, the length of delay—about 15 months from initial indictment to when Vanterpool first filed his motion to dismiss, now up to about 20 months—is presumptively prejudicial. As explained below, however, unlike Grabinski, Vanterpool spent about *four* months incarcerated, and as such the presumption is not particularly weighty here.

Moving to the second factor, the reason for the delay, the Government has vigorously and diligently prosecuted this case. *Cf. Grabinski*, 2026 WL 125230, at *4. While the case has been heavily litigated, the Government has met (or sought the court's permission in advance to extend) each of its filing deadlines in a case that has been replete with pretrial motions (including motions to sever, dismiss, suppress, and Rule 404(b)). While some period of delay is plainly attributable to the Government's failure to timely produce body-worn camera in the Superior Court case, such conduct was, at worst, mere negligence rather than bad faith. Vanterpool's argument that the decision to indict federally here was "purposeful[]" delay (Hrg. Tr. at 29-30) muddies prosecutorial discretion to bring cases federally for his vindictiveness claim (such selection would always be "purposeful") with a "deliberate intent to harm the accused's defense" for purposes of undue delay.

3

*Doggett v. United States*, 505 U.S. 647, 657 (1992). But even if the Court were to attribute to the Government all of the time from Vanterpool's federal arrest through the first motions filed by defendants in this case (May 5, 2025 through September 8, 2025) *plus* the time between defense's first motion for failure to preserve body-worn camera through the continued trial up through the motion to dismiss following disclosure of the body-worn camera in the Superior Court case (November 1, 2024 to February 3, 2025), the balance of time would still be attributable to the defense (approx. 385 days to the defense versus approx. 220 to the Government). Finally, unlike in the prior order dismissing the case for Speedy Trial Act violations in *Grabinski*, the Superior Court dismissal here was expressly *not on the merits* of any issue. At best, this factor is neutral.

Third, Vanterpool has not repeatedly asserted his right to a speedy trial. *Cf. Grabinski*, 2026 WL 125230, at *5. Although the original December 2024 trial date was continued due to the Government's error, the voluminous litigation and briefing since then—even if wise strategy— undercuts the notion that Vanterpool continues to insist on a speedy trial. Moreover, Vanterpool's instant motion appears to be the first time a Speedy Trial-type claim has been made in this litigation.

Fourth and finally, Vanterpool can point to only minimal prejudice. Unlike Grabinski, who spent 43 months incarcerated with seven months of that time awaiting competency restoration, Vanterpool was incarcerated for only four months before the Superior Court judge released him as a result of the Government's failure to timely produce body-worn camera. Since then, Vanterpool has been on court supervision, and he currently has extensive travel permitted for employment purposes and no testing requirements. ECF No. 20. In other words, Vanterpool can point to far less prejudice than Grabinski by continued prosecution here.

## II.    United States v. Gaffney, 25-CR-282 (SLS), 2025 WL 3123668 (D.D.C. Nov. 7, 2025)

With respect to Judge Sooknanan, this Court should not apply *Gaffney* as persuasive authority in this case. *See Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)).  In *Gaffney*, the defendant was initially charged in Superior Court and detained pending trial. 2025 WL 3123668, at *6.  The trial date was set for within 100 days of Gaffney's arrest. *Id.*  After the trial date was set, the Government identified the case as a transfer to federal court, but waited almost two months to indict the case in federal court (with the indictment returned less than 3 weeks before the scheduled trial).  *Id.*  The Government then dismissed the Superior Court case, but Gaffney was ordered detained in the federal case and held. *United States v. Gaffney*, No. 25-CR-00282-SLS-1, 2025 WL 2910986, at *1–2 (D.D.C. Oct. 14, 2025), *report and recommendation adopted in part*, No. CR 25-282 (SLS), 2025 WL 3123668 (D.D.C. Nov. 7, 2025).  By the time of Judge Sooknanan's decision, Gaffney had been incarcerated for 136 days.  *Gaffney*, 2025 WL 3123668, at *2.

Judge Sooknanan dismissed the Indictment with prejudice under Fed. R. Crim. 48(b)(1) for the 73-day delay in presenting the charge to the grand jury. *Id.* at *21 n.21.  Applying the *Barker* factors, Judge Sooknanan concluded under the first factor that this delay was unusually long given the simplicity of the case. *Id.* at *12–13.  Under the second factor, she determined that the Government offered no reason for its 15-day delay in identifying the case for transfer or subsequent delay in presenting the case for indictment, and thus attributed the entirety of the delay to the government. *Id.* at *14–15.  Under the third factor, the court found that Gaffney had repeatedly asserted his right to speedy trial in both Superior Court and federal court.  *Id.* at *15.  Fourth and

5

finally, Judge Sooknanan found that Gaffney was prejudiced by "months of unnecessary pretrial detention," as well as the "uncertainty about when his opportunity to mount a defense would arrive" by the selection of his case for transfer. *Id.* at *16–17. Concluding that the delay was "unusual, unjustified, and prejudicial," Judge Sooknanan then held that the only remedy for the delay was to dismiss the Indictment with prejudice under Fed. R. Crim. 48(b). *Id.* at *17–21.

The facts before Judge Sooknanan in *Gaffney* are so readily distinguishable from the facts of this case that *Gaffney* should not control the outcome in this case. Crucially, Gaffney was detained pending trial. This fact flowed through the Court's opinion. *See, e.g., Gaffney*, 2025 WL 3123668, at *1 ("[T]he touchstone of the speedy trial guarantee is the prevention of unnecessary or prolonged pretrial detention"), *15–16. Judge Sooknanan appeared to suggest the "parking" decision was made to take advantage of "more favorable" pretrial detention standards in Superior Court, and then the Government indicted the case federally shortly before the scheduled trial date. *See id.* at *14–15. Judge Sooknanan noted that this effectively doubled the time the Government would have had in federal court to indict under the Speedy Trial Act. *Id.* at *15.[1] Although her decision was about *pre*-indictment delay under Fed. R. Crim. 48(b)(1), Judge Sooknanan also repeatedly cited to the 136 days of Gaffney's pretrial detention, implying that the Government had also effectively exceeded the 100-day Superior Court trial clock for a detained defendant. *See id.* at *2, *5-7. Here, however, the Superior Court judge already gave Vanterpool the relief he was due under the D.C. Bail Reform Act: release. *See* D.C. Code §§ 1322(h)(3) ("After 100 days . . . the defendant shall be treated in accordance with [D.C. Code] § 23-1321(a) [release on personal recognizance or appearance bond] unless the trial is in progress, has been delayed by the timely

---

[1] The opinion did not address that it applied a more stringent timeline than the 90-day clock to indict set by statute in Superior Court.

6

filing of motions, excluding motions for continuance, or has been delayed at the request of the defendant."). There is no statutory speedy trial clock for released defendants under the D.C. Code, nor is there any claim the Government has sought to avoid the strictures of the Speedy Trial Act. In other words, Judge Sooknanan's apparent concern motivating *Gaffney* that the Government was using its dual charging authority to circumvent the D.C. Code Bail Reform Act's 100-day trial clock (as well as the federal Speedy Trial Act) is simply not present on the facts of this case.

*Gaffney* is also distinguishable on its application of the *Barker* factors. *Gaffney* involved a different period—presentment delay under Rule 48(b)(1)—than the speedy trial period under Rule 48(b)(3) that Vanterpool alleges here. *Gaffney*, 2025 WL 3123668, at *21 n.21. The Government there also proffered "no reason" for the pre-presentment delay; whereas here, the Government has parsed the various periods and attributed them to both parties. *Id.* at *15 ("Throughout this entire time, Mr. Gaffney remained incarcerated. . . .The Government admits that it has no reason for the extended delay.").[2] Gaffney, unlike Vanterpool, "repeatedly asserted his right to a speedy trial throughout these proceedings," both in Superior Court and in federal court. *Gaffney*, 2025 WL 3123668, at *15. Finally, Gaffney's detention meant he was subject to a degree of prejudice that Vanterpool, who is released, simply is not. *Id.* at *16 ("Gaffney has endured months of unnecessary pretrial detention at the D.C. Jail, which has undoubtedly caused him harm."). Judge Sooknanan

---

[2] Judge Sooknanan also suggested that because the Government was "shuttling" cases, it had a "heavy" burden to explain its delay. *Id.* at *14. But the constitutional speedy trial cases the court cited are far afield from these facts. *United States v. Lara*, 520 F.2d 460, 461–62 (D.C. Cir. 1975) involved a similar length of time but was the Government's *third indictment*, after two others were dismissed by the government. The panel opinion in *Mills* expressly did not opine on constitutional speedy trial and remanded to the trial court for findings, which the *en banc* panel upheld. *United States v. Mills*, 925 F.2d 455, 465 (D.C. Cir.), *reh'g granted, judgment vacated*, 933 F.2d 1042 (D.C. Cir. 1991), and *on reh'g,* 964 F.2d 1186 (D.C. Cir. 1992). And in *Hanrahan v. United States*, 348 F.2d 363, 367 (D.C. Cir. 1965), the Government initially indicted the case in Puerto Rico before venue was changed to D.C., and then after representing that the matter would be presented to the grand jury about 15 months into the case, failed to do so for another 19 months.

also cited the "anxiety and concern of a defendant who is incarcerated and faces the prospect of future transfer" as a reason for potential prejudice, but the cases she cited involved already-detained prisoners subject to a much longer period of "uncertainty" than at issue either here or in *Gaffney*. *Id.* at \*16–17 (citing *United States v. Brown*, 520 F.2d 1106, 1112 (D.C. Cir. 1975) (trial not held until four years after arrest), *Smith v. Hooey*, 393 U.S. 374, 375 (1969) (at least six-year period without trial)).

### III. CONCLUSION

In sum, *Grabinski* and *Gaffney* are each far afield from this case, for different reasons. *Grabinski* was a second merits dismissal where deadlines were missed and the case not advanced; *Gaffney* was a pre-indictment delay without explanation where the Court appeared to believe the Government had circumvented statutory protections. There are no such claims here. And in both cases, the defendants were continually detained—the "core" of the Sixth Amendment protection. This case is apples and oranges when compared to *Gaffney* and *Grabinski*. The Court need not follow their lead. It should decline to exercise its discretion under Rule 48(b) to impose the severe sanction of dismissal of the Indictment.

Respectfully,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Michael L. Barclay*
MICHAEL L. BARCLAY
Assistant United States Attorney
N.Y. Bar Reg. No. 5441423
601 D Street, N.W., 5.230
Washington, D.C. 20530
(202) 252-7669
michael.barclay@usdoj.gov