**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**          :

           **v.**          :          **25-cr-00138-01 (RJL)**

**DREMALE VANTERPOOL**          :

**DEFENDANT VANTERPOOL'S
<u>SUPPLEMENT TO MOTION TO DISMISS INDICTMENT</u>**

Mr. Dremale Vanterpool respectfully submits the following response to the Court's January 29, 2026 oral request for additional briefing on his pending motion to dismiss. Mr. Vanterpool simultaneously replies to the government's February 19, 2026 supplement.

The January 29, 2026 motion hearing confirmed key facts supporting dismissal of Mr. Vanterpool's indictment with prejudice. In particular, it established that this case involves (1) a prior history of repeated government misrepresentations; (2) a prior history of late disclosures of body-worn camera ("BWC") footage; (3) prior admitted destruction of multiple BWC videos; (4) the tactical transfer to federal court during the pendency of a Superior Court sanctions/dismissal hearing investigating the government's misconduct; and (5) a delay in bringing this case to trial that spans at least 20 months. These facts, together with the governing law discussed in Mr. Vanterpool's original Motion and Reply warrant dismissal with prejudice under this Court's supervisory powers and Federal Rule of Criminal Procedure 48(b).

I.  **The Government's Failures to Timely Disclose Evidence and Its Decision to Move Charges to Federal Court to Avoid a Sanctions Ruling on the Merits Resulted in a Violation of Mr. Vanterpool's Speedy Trial Rights.**

"Unnecessary delay" in this case arises from the government's abuse of its dual-charging role as both the local and federal prosecutor. The delay is substantial and is attributable solely to the government based on discretionary choices it has made since first arresting and charging

Mr. Vanterpool. Contrary to the government's arguments, *United States v. Grabinski*, 25-CR-019 (RJL), 2026 WL 125230 (D.D.C. Jan. 16, 2026), and *United States v. Gaffney*, 25-CR-282 (SLS), 2025 WL 3123668 (D.D.C. Nov. 7, 2025), each support dismissal here.

The government claims that because Mr. Vanterpool "has not pointed to any failure by the Government to adequately prosecute this case," and because he was not incarcerated, he has not been harmed to the same degree as the defendants in *Grabinski* and *Gaffney*. *Id*. 4, 8. The government misunderstands these cases. Neither *Grabinski* nor *Gaffney* are limited by the *Barker* factors and instead acknowledge those factors in conjunction with the need for courts to sometimes exercise their supervisory power to vindicate a defendant's and the public's rights where prosecutorial misconduct has caused unnecessary delay or undermines the integrity of the criminal process. Mr. Vanterpool seeks nothing greater here.

As Mr. Vanterpool has previously explained, the facts of his case satisfy each *Barker* factor. *See* Defendant Vanterpool's Motion to Dismiss Indictment (under *Barker v. Wingo*, 407 U.S. 514 (1972), identifying facts showing: (1) lengthy delay in prosecution of case, (2) that government was to blame for the delay, (3) that Mr. Vanterpool asserted right to a speedy trial early in case, (4) and suffered prejudice beyond detention, to establish speedy trial violation).

To its credit, the government concedes that the 20-month delay since Mr. Vanterpool's June 26, 2024 Superior Court indictment is presumptively prejudicial; the delay therefore satisfies the first *Barker* factor. The Court should also consider, however, that Mr. Vanterpool was originally arrested and released in this case on June 7, 2023.[1] The time from June 7, 2023 until the present amounts to 32 months. *See United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("In addition

---

[1] For reasons the government has not disclosed, it chose not file charges against Mr. Vanterpool for over one year, during which time it failed to properly maintain evidence in the case.

to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim." (citing *Dillingham v. United States*, 423 U.S. 64 (1975))); *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) ("[O]nce the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government.").

As to the second *Barker* factor, the government seeks to minimize its responsibility for being the sole cause of delay in this case and argues that Mr. Vanterpool bears greater responsibility (Gov't Supp. at 4 arguing defense is responsible for 385 days of delay compared to government's 220 days). The government does not offer a rational factual basis for this bald assertion. And there is none, as the facts establish that the government is exclusively to blame for delay: On June 26, 2024, when the government obtained an indictment in Superior Court and a requested a warrant for Mr. Vanterpool's arrest, it made no effort to notify Mr. Vanterpool until it arrested him on August 1, 2024. From August 1 through December 2, 2024, Mr. Vanterpool was detained after having requested a speedy trial (thereby satisfying the third *Barker* factor). When the December 2, 2024 date for trial arrived, Mr. Vanterpool was prepared to proceed, but the government requested a continuance because it had found additional videos that it had previously and repeatedly represented did not exist. The Superior Court granted the government's request and also released Mr. Vanterpool from custody. On February 3, 2025, in response to yet more late disclosures and revelations of destroyed body-worn camera footage, Mr. Vanterpool filed a motion to dismiss his case in Superior Court. This was almost 20 months after Mr. Vanterpool was originally arrested in June 2023.

To the extent the government posits any basis for blaming Mr. Vanterpool for delay, it argues that any period of delay from February 3, 2025 until May 5, 2025, when defense motions

in federal court were filed, should be attributed to him. It argues that Mr. Vanterpool's motion for sanctions for government misconduct "undercut[] the notion that Vanterpool continues to insist on a speedy trial." Gov't Supp. at 4. But Mr. Vanterpool's motions were filed to vindicate his rights in response to the government's misrepresentations and failures. The government implicitly admits as much but begs excuse, arguing its "conduct was, at worst, mere negligence rather than bad faith." Gov't Supp. at 3. "Although negligence is obviously to be weighed more lightly than deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett v. United States*, 505 U.S. 647, 656-57 (1992). Simply put, even if the government's conduct is merely negligent, it must be counted against it and not Mr. Vanterpool.

Also, any delay for the government to answer for its conduct in the context of the pending Superior Court sanctions/dismissal proceeding could hardly be attributed to Mr. Vanterpool, especially not where the government circumvented a speedy resolution there by abandoning its prosecution in that court and filing charges here for the exact same conduct. The delay resulting from the government's maneuvers was foreseeable and again attributable to the government alone. These facts establish a paradigmatic case of "unnecessary delay" under Rule 48(b) that stands apart from a pure speedy trial violation.

Finally, the government reduces the fourth *Barker* factor – prejudice to the defendant – to a question of whether the defendant was incarcerated during the delay at issue. Leaving aside that Mr. Vanterpool was incarcerated for four months, *Grabinksi* and *Gaffney* do not limit prejudice to incarceration. The government's misrepresentations and destruction of BWC evidence as well as its steps to transfer this case to federal court to avoid an adverse ruling in Superior Court are

4

separate grounds for finding that Mr. Vanterpool was  prejudiced by the government's machinations. Mr. Vanterpool details each below.

First, the spoliation of BWC evidence was a clear Rule 16 violation. The government concedes that five MPD body-worn camera videos were not preserved and are now lost (after having misrepresented that they did not exist). *See* January 29, 2026 Hr'g Tr. 12:21–12:25, 15:13–15:19. It does not dispute that, had these videos been preserved, they would have been discoverable and relevant to the officers' actions in arresting Mr. Vanterpool and allegedly recovering the evidence that forms the basis for the § 922(g) charge in this case. Indeed, recordings of police activity at the scene of an arrest for a gun charge are material to cross-examination and impeachment, regardless of whether it is possible to precisely identify what specific inconsistencies the missing videos might reveal. As the Court itself acknowledged, it is hard to assess materiality of lost evidence where "No one has ever seen them." January 29, 2026 Hr'g Tr. 12:24. In any event, the government does not dispute the irreparable loss of evidence as the missing body-worn camera videos can never be restored. And an adverse-inference instruction or a limitation on officer testimony cannot adequately account Mr. Vanterpool's permanent loss of potentially exculpatory or impeaching video footage. In this regard, the government's failure to preserve and timely disclose this evidence was a Rule 16 violation that standing alone would call for a significant sanction.

Second, rather than face the issue of sanctions in Superior Court, the government sought dismissal there and charged Mr. Vanterpool for the exact same conduct in this Court. This choice was an abuse of the government's dual charging authority. Mr. Vanterpool certainly recognizes that the government has broad discretion to select a forum in the first instance. But what makes this case exceptional and warrants supervisory intervention is not the mere fact of dual charging,

but the government's decision to indict and litigate extensively in one forum, reach the eve of trial under circumstances that prompted an impending ruling on concerning serious government misconduct, and then abandon that prosecution to refile the same case in this forum in order to escape the looming consequences of its actions.

The government does not now dispute that by changing venue, it short-circuited a ruling in Superior Court that could have had preclusive effect on the continued prosecution of this case.[2] Indeed, the government implicitly admits as much in arguing that the dismissal "was expressly *not on the merits* of any issue," presumably to convey that this Court is not bound by any prior ruling concerning government misconduct. Gov't Supp. at 4. But allowing the government to use its dual charging authority to evade responsibility for misconduct in the Superior Court and to then file what is essentially the same case in this Court would encourage such delays and misrepresentations – whether negligent or intentional – in future cases. It would signal that, when sanctions loom in one forum for violations of rules of criminal procedure, the government may simply dismiss and start anew across the street, thereby neutering the ability of the Superior Court to vindicate its authority to enforce the rules of criminal procedure. In this regard, the government's tactics constitute conduct that reflects negatively on the integrity of the criminal process and are prejudicial to the public. They are forms of prejudice that Rule 48(b) is well-suited to address.

The government's tactic of delaying and restarting litigation also prejudices Mr. Vanterpool directly. Mr. Vanterpool has lived under threat of these charges for 32 months, was detained for approximately four months in Superior Court, and then forced to give up counsel

---

[2] The government asked the Superior Court to dismiss Mr. Vanterpool's case with prejudice without making findings. By granting that request without findings that a prosecutor acted improperly, the government was not precluded from benefiting from the prior prosecutor's misconduct and pursuing the case anew.

he had paid to represent him in Superior Court and to restart with new counsel when his case was moved to federal court. The anxiety, disruption, and drain of his resources are the very harms against which speedy trial rights protect, and which Rule 48(b) is meant to deter. *See Doggett*, 505 U.S. at 655–56; *Barker*, 407 U.S. at 532–37. Indeed, our Circuit Court has stated the purpose of Rule 48(a) is to prevent the prosecution from bringing charges and then "dismissing [them] without having placed a defendant in jeopardy and commencing another prosecution at a different time or place deemed more favorable to the prosecution." *United States v. Ammidown,* 497 F.2d 615, 620 (D.C. Cir. 1973). For these reasons, and consistent with *Gaffney* and *Grabinski*, dismissal with prejudice is the only remedy that both addresses the prejudice to Mr. Vanterpool and deters similar misuse of the government's unique charging powers in this district.

Finally, Mr. Vanterpool has presented evidence that the government transferred his case to federal court to secure a more severe sentence. This is certainly within the government's prerogative. But the government instituted transfer only after Mr. Vanterpool asserted certain rights to speedy trial, discovery, and sanctions for government misconduct. The record thus establishes at least some evidence of vindictiveness. Mr. Vanterpool does not ask the Court to resolve broader questions about the "Make D.C. Safe Again" initiative that the government has offered as a reason for the transfer, or to make a finding that similar firearms cases have been treated differently, or to issue a ruling concerning prosecutorial policy discretion. Indeed, the Court need not decide any vindictiveness claim as a standalone violation at all. Rather, Mr. Vanterpool merely asks the Court to recognize that the government did not dispute its desire for a more severe penalty for Mr. Vanterpool in federal court or that it sought a late-stage forum change to escape pending sanctions. January 29, 2026 Hr'g Tr. 25:20-21. These circumstances are additional

evidence that this case is out of the ordinary and therefore offer more of a reason for the Court to exercise its supervisory dismissal power under Rule 48.

**Conclusion**

For all of these reasons, those set forth in Mr. Vanterpool's original Motion, Reply, and the hearing on this matter, and any others that may become apparent to the Court, the Court should exercise its authority under Rule 48(b) and its supervisory powers, and independently or in the alternative, under the Sixth Amendment, dismiss Mr. Vanterpool's indictment with prejudice.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

    /s/

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500